IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


CARROLL COMPANY <u>et al.</u>        *
                                     *
v.                                   *      Civil Action No. WMN-11-1700
                                     *
THE SHERWIN-WILLIAMS COMPANY         *
                                     *
                                     *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**<u>MEMORANDUM</u>**

Before the Court is Defendant The Sherwin-Williams
Company's Motion to Dismiss, ECF No. 10.  The motion has been
fully briefed.  Upon a review of the papers and applicable case
law, the Court determines that no hearing is necessary, Local
Rule 105.6, and that the motion to dismiss will be granted in
part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This action involves a dispute over the clean-up
obligations of the seller of a nine-acre tract of land.  On
December 23, 2005, Plaintiff Carroll Company (Carroll) and
Defendant The Sherwin-Williams Company (Sherwin-Williams)
entered into a Purchase and Sale Agreement (PSA) by which
Carroll agreed to purchase the real property and facilities
located at 1354 Old Post Road in Havre de Grace, Maryland
(Property).  Both parties knew that the Property was
historically used as an industrial site, and Carroll, a

manufacturer of industrial cleaning and maintenance products,
continues to operate a chemical blending facility on the
Property.  Plaintiff Ogden, LLC (Ogden) is an entity created for
the purpose of owning the Property at issue; contemporaneous
with the closing of the PSA, Carroll assigned certain rights
under the PSA to Ogden and leased back the Property and related
assets such that Carroll maintained operational control of the
business operations at the facility.

In 1989 and 1991, years before either party owned the
Property, the Maryland Department of the Environment (MDE)
conducted a phased groundwater investigation and discovered the
presence of volatile organic compounds in the groundwater.  ECF
No. 1-7.  A final work plan was submitted to MDE in November
1991, but there is no record that the owner at the time, Cello
Corporation, completed the proposed remediation.  Id.
Subsequently, in 1996, Sherwin-Williams purchased the Property
for use as a chemical blending facility and operated it as such
through the time at which it entered into the PSA with Carroll.

On November 21, 2005, a month before the parties entered
into the PSA, MDE sent a letter to Sherwin-Williams requesting
information about any environmental investigation or remedial
activities that had taken place on the Property subsequent to
the work plan submission in 1991.  The purpose of the letter was
to solicit information so that MDE could determine whether it

could close its case file.  The letter also noted that "[u]nder Section 7-221 of the Environment Article [of the Maryland Code], responsible persons, including the owner and current or past operators of the site, are liable for all costs incurred by the State in responding to any release or threatened release, including oversight, enforcement and investigation" and suggested that Sherwin-Williams may want to address the site under Maryland's Voluntary Cleanup Program.  ECF No. 1-7 at 3.  Participation in the VCP, however, was not explicitly required by the notice.  On December 13, 2005, Sherwin-Williams sent the MDE letter to Plaintiffs for their review.

On December 20, 2005, Plaintiffs sent an email to Sherwin-Williams requesting immediate assistance with several environmental concerns, including the MDE letter.  With regard to the MDE Letter, Plaintiffs stated that they "would consider a response to this letter and closure of the matter to be [Sherwin-Williams'] responsibility."  ECF No. 1-8.  Plaintiffs also stated that "if the Voluntary Cleanup Program would give [Plaintiff Ogden] immunity from liability, we would like for you to apply for that program and conduct the response under that program."  Id.

On December 23, 2005, the parties entered into the PSA, the purchase price exceeding two million dollars.[1]  Concurrently, Sherwin-Williams presented Plaintiffs with a letter confirming Sherwin-Williams' intent to pursue the VCP as proposed by MDE in its letter (Confirmation Letter).  ECF No. 1-9.  This is the only documentation in the record that addresses Plaintiffs' December 20 email.

The parties initially planned to close on the Property on March 31, 2006, but agreed to postpone the closing until July 7, 2006, so that there was sufficient time for the parties to resolve pending environmental issues.  Sherwin-Williams hired Environmental Resources Management ("ERM") to prepare VCP applications to be submitted to MDE on behalf of Sherwin-Williams, Carroll and Ogden.

According to Plaintiffs, in late June 2006, ERM hand-delivered to MDE applications for expedited "inculpable person" status for Carroll and Ogden.  An "inculpable person" is a party that "has no prior or current ownership interest in an eligible property at the time of application" and "has not caused or contributed to contamination at the eligible property at the time of application."  Md. Code Ann., Envir. § 7-501(j).  In

---

[1] Contemporaneous with the PSA, Carroll completed an asset purchase with Sherwin-Williams by which Carroll assumed control of the business operations and facility, leasing the Property from Sherwin-Williams pending the closing of the PSA.

letters dated July 3, 2006, and July 6, 2006, respectively, MDE indicated that it granted Ogden and Carroll expedited inculpable person approval pursuant to the requests received from ERM on June 28, 2006.  ECF No. 1-11 at 50, 28.

Subsequently, on July 6, 2006, the day prior to closing on the PSA, Sherwin-Williams provided Plaintiffs with draft VCP applications to be submitted to MDE on behalf of Sherwin-Williams, Carroll and Ogden.  According to the complaint, the draft applications proposed enrollment in the VCP for remediation to a "Tier 3 (Industrial)" standard, which Plaintiffs immediately rejected.  Plaintiffs demanded that the applications be revised to reflect remediation to the highest "Tier 1 (Residential)" standard, and threatened that they would not proceed to closing unless these revisions were made. Sherwin-Williams revised the applications accordingly and sent them for Plaintiffs' approval on the day of closing.

The revised applications note that Sherwin-Williams is the current owner of the property and a "Responsible Person," [2] that Carroll is the operator of the facility and an "inculpable person," and that Ogden is a party "considering purchasing the property" and an "inculpable person."  ECF No. 1-11.  The applications also note that the property is zoned for "General

_____

[2] A "'Responsible person' means any person who . . . is the owner or operator of a . . . site containing a hazardous substance . . . ."  Md. Code. Ann., Envir. § 7-201(u).

5

Industrial," with no pending requests for zoning variances, special exceptions or reclassification, and the intended future property use is Tier 1 (Residential), A (Unrestricted).  Id. Plaintiffs signed both the Carroll and Ogden applications on July 6, 2006.  ERM subsequently submitted the applications to MDE (Tier 1 VCP Applications) and Sherwin-Williams paid all application fees.

On the day of closing, the parties also executed a Site Access Agreement (SAA), which is referred to in the PSA.  The SAA states in part:

> ... [Sherwin-Williams] desires to obtain access to such Property from Grantors to fulfill [Sherwin-Williams'] obligations under Paragraph 10 of the Purchase Agreement, which may include installing and monitoring of groundwater wells and such other tasks in order to obtain a Certificate of Completion under the Voluntary Cleanup Program administered by the [MDE] as more fully set forth in the VCP Remedial Action Plan as may be amended, and which will be attached hereto as Exhibit A and as the scope of work (the "Activities").

ECF No. 1-12 at B.  Sherwin-Williams' obligations under Paragraph 10 have to do with indemnification for environmental contamination, and the reference to the installation and monitoring of groundwater wells appears to be a reference to the unfinished actions from 1991 which were mentioned in the November 21, 2005, letter from MDE.  Notably, no VCP Remedial Action Plan was ever drafted.

On September 4, 2008, over two years after the parties closed on the PSA, MDE notified Plaintiffs that the VCP Tier 1 Applications had been denied because Sherwin-Williams never responded to MDE's comments on the application package and never submitted an environmental site assessment.  The notice stated that the parties could resubmit the VCP applications within 60 days without incurring a new application fee, and Plaintiffs secured an assurance via email on September 18, 2008, that Sherwin-Williams was communicating with MDE and would timely respond.  In October 2008, Sherwin-Williams sent Plaintiffs proposed draft applications which reverted to a Tier 3 standard and stated that the future land use would be industrial. Plaintiffs objected to the alteration of the VCP Tier 1 Applications to a Tier 3 standard and requested that Sherwin-Williams send a corrected draft.  Sherwin-Williams ignored the objections and submitted the applications reflecting remediation at the Tier 3 standard.

In April 2009, MDE rejected the "inculpable persons" VCP applications previously submitted due to the discrepancy created by the Tier 3 indication on the new applications.  On June 3, 2009, MDE stated that it deemed Sherwin-Williams' revised applications withdrawn because Sherwin-Williams failed to provided MDE notice of its intent to proceed in the VCP program. In light of this decision, on June 19, 2009, Plaintiffs asked

7

MDE to accept the original and unaltered VCP Tier 1 Applications and to enroll the property in the VCP as initially proposed. Notwithstanding, on June 23, 2009, MDE rejected Plaintiffs' request and stated that it would not consider any more VCP applications until the parties resolved their legal dispute over future land use at the property.

Plaintiffs have filed a complaint for breach of an alleged remediation agreement, breach of the indemnity agreement, intentional misrepresentation, fraud in the inducement, negligent misrepresentation, and promissory estoppel arising from Defendant's failure to remediate the property to Tier 1 residential status under the VCP despite an alleged representation that it would do so.  Plaintiffs also seek relief in the form of a declaratory judgment and attorneys' fees.

## II. LEGAL STANDARD

In evaluating a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept as true all well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957). At the same time, the complaint must contain "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). This pleading standard demands "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Facts must be evaluated in context, but courts are not bound to accept as true "a legal conclusion couched as a factual allegation." Id.

## III. DISCUSSION

### A. Breach of Contract/Remediation Agreement

In Count I of the Complaint, Plaintiffs allege that "Sherwin-Williams breached its agreement to remediate the environmental contamination at the Property to a Tier 1 (Residential) standard." ECF No. 1 at 17. Defendant argues that this count must be dismissed because there is no evidence that an enforceable "Remediation Agreement" exists.

To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. Taylor v. NationsBank, N.A., 776 A.2d 645 (Md. 2001).

9

Plaintiffs posit that Defendant's contractual obligation to remediate the property is found via the integration of four writings: the PSA, the Confirmation Letter, the SAA and the Tier 1 VCP Applications.  Plaintiffs argue that when these documents are read together in the context of the underlying transaction it is clear that Defendant made a written agreement to remediate the Property to a Tier 1 standard.

The Court does not agree.  Even if Maryland law[3] requires the documents to be read together, their integration does not plausibly create a binding obligation that Defendant remediate the property to a Tier 1 standard.  Plaintiffs correctly state that the "PSA standing alone requires full indemnification by Defendant for all pre-existing environmental conditions at the Property," and that it requires delivery of a SAA upon closing. Opp. at 7.  Plaintiffs, however, overstate the obligations created by the other documents.  The SAA is a document whose main purpose is to state the terms upon which Defendant is granted a limited right of access to the Property after closing so that it may fulfill its obligations under the indemnification provision of the PSA.  Contrary to Plaintiffs' interpretation,

---

[3] The parties assume without any discussion that Maryland contract law applies.  As the parties are in agreement and the lawsuit involves a property located in Maryland and the obligation to remediate that property pursuant to a program governed by Maryland law, the Court will presume that Maryland law applies.

the SAA notes that these obligations "may" include certain tasks necessary to obtain a Certificate of Completion under the VCP, and does not explicitly mandate that a VCP be pursued unless required by Paragraph 10 of the PSA.[4]  Nowhere does the SAA itself actually require Defendant to participate in the VCP at all, let alone participate to a Tier 1 standard.  Furthermore, while it is true that the Confirmation Letter confirms Defendant's intent to pursue the VCP, the letter does not mention any remediation agreement between the parties or that the VCP is part of that remediation agreement.  In fact, the Confirmation Letter merely confirms Defendant's intent to pursue the VCP "as proposed by the [MDE] in its letter . . . dated November 21, 2005."  Notably, the primary purpose of the MDE letter was to inquire into the status of remediation efforts that had occurred in the past, prior even to Defendant's ownership of the property.  The pursuit of a VCP is only mentioned in the last paragraph of the letter in the context of a suggestion, in that Defendant "may want to" address the site under the VCP, and the letter does not propose a Tier or future land use for the property.  Finally, though the VCP Application indicates that Defendant indeed applied to the VCP seeking a Certificate of Completion for a Tier 1 future property use, the

---

[4] The obligations created by Paragraph 10 of the PSA will be discussed more extensively with respect to Count II- Breach of Contract/Indemnification Agreement.

application does not bind Defendant to the VCP program or to a

Tier 1 standard remediation, as the program is strictly

voluntary and a party can withdraw at any time.[5]  Moreover, to

the extent that the application could create any obligation,

such obligation would be between Defendant, as the applicant,

and MDE, not between Defendant and Plaintiffs.[6]

---

[5] See MDE VCP Guidance Document, Revision Date 3/17/06 at 10,
http://www.mde.state.md.us/programs/Land/MarylandBrownfieldVCP/D
ocuments/www.mde.state.md.us/assets/document/Guidance%20Document
%202-1-07(2).pdf (last accessed Jan. 11, 2012).

[6] Plaintiffs also appear to suggest as a throwaway argument that
the Tier 1 VCP Application is a writing evidencing an oral
agreement to remediate the property to a Tier 1 standard and so
satisfies the Statute of Frauds.  See Opp. at 9.  The Statute of
Frauds requires that

> No action may be brought on any contract for the sale or
> disposition of land or of any interest in or concerning
> land unless the contract on which the action is brought, or
> some memorandum or note of it, is in writing and signed by
> the party to be charged or some other person lawfully
> authorized by him.

Md. Code Ann., Real Prop. § 5-104 (2011).  The Maryland Court of
Appeals has explained,

> To render a contract enforceable under the statute of
> frauds, the required memorandum must be (1) a writing
> (formal or informal); (2) signed by the party to be charged
> or by his agent; (3) naming each party to the contract with
> sufficient definiteness to identify him or his agent;(4)
> describing the land or other property to which the contract
> relates; and (5) setting forth the terms and conditions of
> all the promises constituting the contract made between the
> parties.

Beall v. Beall, 434 A.2d 1015, 1018 (Md. 1981).  The Tier 1 VCP
Application will not satisfy these requirements because it does

At most, the four writings taken together may plausibly suggest that Defendant was obligated to pursue a VCP, not that it was obligated "to remediate the environmental contamination at the Property to a Tier 1 (Residential) standard."  Therefore, Count I will be dismissed.

### B. Breach of Contract/Indemnity

In Count II of the Complaint, Plaintiffs allege that, "by its wrongful conduct," Defendant breached its agreement, found in paragraph 10 of the PSA, to indemnify Plaintiffs against all pre-existing environmental conditions at the Property.  ECF No. 1 at 17.  Paragraph 10(c) states in relevant part:

> [Defendant]. . .agrees to indemnify, protect, defend. . .
> and hold harmless [Plaintiffs] . . . from and against any
> and all demands, claims, judgments, causes of action,
> damages, penalties, fines, taxes, costs, liabilities,
> losses and expenses . . . arising from any act, omissions
> or event occurring at any time prior to the purchase of the
> property . . .as a direct or indirect result of or in
> connection with the violation of any environmental laws. .
> . and/or the presence of any hazardous substances on. . .
> the property. . .which originated on the property as a
> result of activities conducted on the property. . .

---

not meet requirements 2 or 5.  It does not identify each party
to the contract; in fact neither Carroll nor Ogden are mentioned
in Defendant's Responsible Person application, and all parties
are named together only as parallel applicants.  Moreover, the
VCP Applications do not set forth any terms and conditions of a
promise constituting a contract made between the parties; this
is particularly true because the application does not indicate
any terms or conditions that could be construed as consideration
offered by Plaintiffs for Defendant's purported promise to
remediate to Tier 1.  Therefore the Tier 1 VCP Application is
not evidence of any oral agreement between the parties.

ECF No. 1-6 at 8.  Plaintiffs argue that this language creates
an indemnity obligation that extends beyond reimbursement for
claims made by third parties.  They argue that this provision
also requires Defendant to reimburse Plaintiff for any "losses"
in the property value due to preexisting environmental
contamination, as well as for any "'costs and liabilities'
resulting from Defendant's offloading of contaminated land on
Plaintiffs and/or the resulting tab for cleaning up the mess."
Opp. at 13.

Plaintiffs' proposed interpretation strains the limits of
the concept of indemnity.  Indemnity gives the right of
"reimbursement to one party who has been compelled by law to pay
what the other party should pay." Howard Univ. v. Good Food
Servs., Inc., 608 A.2d 116, 122 (D.C. 1992); see also Strong v.
Prince Georges County, 549 A.2d 1142, 1144 (Md. Ct. Spec. App.
1988) ("Indemnification is an agreement to reimburse one who has
been held liable for the amount of his loss.").  In making this
argument, Plaintiffs seek to interpret the words "losses" and
"costs" absent the context provided by the words accompanying
them.  Applying the canon of noscitur a sociis, which provides
that "a word is given more precise content by the neighboring
words with which it is associated," United States v. Williams,
553 U.S. 285, 294 (2008), the meaning of "losses" and "costs" is
informed by the surrounding words in the list: "demands, claims,

14

judgments, causes of action, damages, penalties, fines, taxes, costs, liabilities, losses and expenses." Thus the costs and losses for which Plaintiffs are entitled to reimbursement are those that Plaintiffs incur because of some action taken by a third party, such as a demand made by the State that the Property be remediated or a fine assessed because of the contamination; Plaintiffs cannot trigger the reimbursement obligation of paragraph 10 on their own, for example, by claiming a loss in the value of the Property. This is not what indemnification is meant to protect.

While paragraph 10 clearly creates an indemnification obligation under the contract, this obligation will not be triggered until and unless a third party makes a claim, seeks to hold Plaintiffs liable for environmental violations, or demands remediation of the preexisting contamination. As Plaintiffs have not alleged facts to plausibly suggest that the indemnification obligation found in paragraph 10 of the PSA has been triggered, there can be no breach.[7] Therefore, Count II will be dismissed.

_____

[7] The Court notes that though the allegations in the Complaint clearly demonstrate that MDE is aware of the contamination, there is no suggestion that MDE has yet demanded that Plaintiffs take any action to remediate the property. It is clear that the indemnity clause will be triggered if MDE demands action be taken and Defendant will be obligated to indemnify Plaintiffs accordingly. The facts even suggest that Defendant knows that it is responsible for the preexisting contamination, as

**C. Intentional Misrepresentation & Fraud in the Inducement[8]**

In Counts III and IV, respectively, Plaintiffs allege
Defendant is liable for intentional misrepresentation and fraud
in the inducement.  To sustain a claim for either of these
causes of action, a plaintiff must allege:

> 1) that the defendant made a false statement of material
> fact to the plaintiff; (2) that its falsity was either
> known to the defendant or the representation of fact was
> made with reckless indifference as to its truth; (3) that
> the misrepresentation of fact was made for the purpose of
> defrauding the plaintiff; (4) that the plaintiff relied
> upon the misrepresentation and had the right to rely on it;
> and (5) that the plaintiff suffered compensable injury from
> the misrepresentation.

Wootton Enters. v. Subaru of Am., Inc., 134 F. Supp. 2d 698, 714

(citing VF Corp. v. Wrexham Aviation Corp., 715 A.2d 188, 193

(Md. 1998)); see also Alleco Inc. v. Harry & Jeanette Weinberg

Found., 665 A.2d 1038, 1048 (Md. 1995)(stating the elements for

fraud or deceit, aka intentional misrepresentation).  The first

element may include "a false representation of an existing

intention to perform where such intent is in fact nonexistent."

Id. (quoting Tufts v. Poore, 147 A.2d 717 (Md. 1959)); see also

---

evidenced by its submission of the VCP applications which named
Defendant as a "responsible person" and Plaintiffs as
"inculpable persons."

[8] Defendant has noted that the elements for both of these causes
of action are the same, see Mot. at n. 5, and Plaintiffs have
not disputed this contention.  As such, though Plaintiffs plead
these as two separate causes of action, because the claims rely
on the same set of facts and same legal foundation, the Court
will complete a singular analysis for both Counts.

Gross v. Sussex, Inc., 630 A.2d 1156, 1161-1162 (Md. 1993)
("making a promise as to a matter material to the bargain with
no intention to fulfill it is an actionable fraud").

Defendant argues that these claims must be dismissed
because Plaintiffs have failed to allege any actual
misrepresentation with the specificity required by the
heightened pleading standard found in Rule 9(b).  Rule 9(b)
requires that the complaint allege "the time, place, and
contents of the false representations, as well as the identity
of the person making the misrepresentation and what he obtained
thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d
776, 784 (4th Cir. 1999); see also Fed. R. Civ. Proc. 9(b).
Notwithstanding, the Fourth Circuit has advised that "a court
should hesitate to dismiss a complaint under Rule 9(b) if the
court is satisfied: (1) that the defendant has been made aware
of the particular circumstances for which [it] will have to
prepare a defense at trial, and (2) that plaintiff has
substantial prediscovery evidence of those facts."  Id. at 784
(internal quotations and citations omitted).

The Court holds that Plaintiffs have adequately pleaded the
circumstances constituting the alleged fraud.  Through the
detailed Complaint and attached exhibits, Plaintiffs clearly
allege that both the Confirmation letter and the Tier 1 VCP
Applications contained false representations.  The copies of

these documents, which were attached to the complaint, reveal
the identities of the person making the representations (the
signatory) and the time, place and content of the
representations.  Though the documents themselves do not
indicate what was gained by making the representations, the
Complaint repeatedly alleges that without these representations
Plaintiffs would not have closed on the transaction.

It is alleged that the Confirmation Letter is a false
statement insofar as it represents that Defendant planned to
"pursue" the VCP when in fact, at the time it made this
representation, Defendant had no intent to do so.  Defendant
argues that the Confirmation Letter is not a false statement
because "Sherwin-Williams did in fact pursue the VCP as
contemplated by the letter."  Reply at 20.  The Complaint
acknowledges that Defendant hired an environmental firm to
complete the VCP applications and that those applications were
submitted to MDE, but also alleges that Defendant failed to
submit additional documentation requested by MDE which caused
the VCP applications to be denied.  In light of these facts,
Defendant's argument must assume that preparing and submitting
the VCP applications to MDE, not actually being accepted to and
participating in the VCP, fulfilled Sherwin-William's promise to
"pursue" the VCP.  As the meaning of the word "pursue" is in
dispute and it would be premature for the Court to resolve this

18

dispute without the aid of discovery, the allegations as pleaded are sufficient to support Plaintiffs' contention that the Confirmation Letter is a false statement.

Defendant also argues that the Tier 1 VCP Applications are not false statements on which Plaintiffs can base their causes of action because the Tier 1 Applications are not actual false statements but, at most, "implied representations."  Mot. at 18 (citing Alleco, 665 A.2d at 1049, for premise that Maryland does not accept the "implied misrepresentation" theory).  Defendant bases this argument on the assumption that the Tier 1 Applications cannot be considered "false representations" because they do not make an explicit promise to participate in the VCP.  This assumption is flawed, however, because while it is true that the Tier 1 Applications do not bind Defendant to participate in the VCP and complete the necessary requirements to obtain a Certificate of Completion, the submitted applications, which were signed under penalty of perjury by an authorized Sherwin-Williams representative, themselves contain statements that represent Defendant to be a "Responsible Person" seeking a Certificate of Completion, conditioned on a Tier 1A future property use, which will be issued upon satisfactory completion of an approved response action plan, which the

application indicates as "to be provided."[9]   The Complaint

alleges that Defendant provided copies of these Tier 1 VCP

Applications to Plaintiffs on the closing date prior to the

actual closing of the transaction, lending additional support to

the contention that the contents of the applications were

representations material to the transaction.

Finally, Defendant argues that the claims must be dismissed

because Plaintiffs' reliance on any statements allegedly made by

Defendant is unreasonable and unjustifiable in light of explicit

language found in paragraph 10(b) of the PSA, which states that

Plaintiffs "[have] not relied, and will not rely, upon any

document, information, representation or statement (other than

those expressly made in this agreement) made or provided by

[Sherwin-Williams]. . ."  This language operates like a general

merger clause, in that it indicates, without specifically

disclaiming representations as to a particular subject matter,

that the parties, in making the agreement, will not rely on

---

[9] All of this information is contained on the Tier 1 VCP
Applications, which were attached as exhibits to the Complaint
and can be found at ECF No. 1-11.  The application defines a
"Certificate of Completion" as "a notice issued by the
Department after satisfactory completion of an approved response
action plan" which states that the requirements of the response
action plan have been completed and implementation of the
response action plan has achieved the applicable cleanup
criteria.  ECF No. 1-11 at 19.  The application also notes that
the section indicating the intended future use of the property
"must be completed because the selected cleanup criteria and
issuance of . . . a Certificate of Completion will be contingent
upon the future use of the property."  Id. at 20.

anything outside of the four corners of the agreement.  See
Greenfield v. Heckenbach, 797 A.2d 63, 75-76 (Md. Spec. App.
2002) (discussing distinction between general merger clauses and
specific disclaimers of reliance upon certain representations).
Despite Defendant's contention, Maryland law clearly states that
a plaintiff can successfully bring a tort action for fraudulent
or negligent misrepresentation based on false promises even if
the written contract contains general merger language and the
alleged false promises are not mentioned in the written
contract.  Greenfield, 797 A.2d at 76, 81.  This promotes a
"policy of encouraging honesty and candor in contract
negotiations," id. at 81 (quoting with approval Keller v. A.O.
Smith Harvestore Products, Inc., 819 P.2d 69 (Colo. 1991)), and
prevents sellers from hiding behind integration clauses "to
avoid the consequences of misrepresentation, whether fraudulent
or negligent."  Id. (internal quotations and citation omitted).

     Though at this early stage of litigation the Court cannot
decide as a matter of law that the merger language defeats the
reasonableness of Plaintiffs' reliance on extra-contractual
representations, this language is not without significance.  As
noted in Greenfield, the presence of merger language "goes
directly to the disputed factual question of whether the
[Plaintiffs] were actually deceived by the representations made
by the [Defendants]," and may be a factor for the jury to

consider at trial when weighing various issues, including

whether reliance was reasonable in light of the fact that

Plaintiffs are sophisticated parties that would have understood

the meaning of the contract when they read it.  Id. at 78.[10]

As the Complaint pleads sufficient facts to satisfy Rule

9(b) and the alleged misrepresentations are sufficient

statements on which to base causes of action for fraud, the

Court will deny Defendant's motion as to Counts III and IV.

### D. Negligent Misrepresentation

In Count V, Plaintiffs allege Defendant is liable for

negligent misrepresentation.  The elements of this tort are:

> (1) the defendant, owing a duty of care to the plaintiff,
> negligently asserts a false statement; (2) the defendant
> intends that his statement will be acted upon by the
> plaintiff; (3) the defendant has knowledge that the
> plaintiff will probably rely on the statement, which, if
> erroneous, will cause loss or injury; (4) the plaintiff,
> justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the
> defendant's negligence.

Martens Chevrolet, Inc. v. Seney, 439 A.2d 534, 539 (Md. 1982).

In addition to the challenges raised in opposition to the fraud

counts, discussed supra, Defendant also argues that the

negligent misrepresentation claim fails because Defendant's

---

[10] Defendant also makes an argument that it would not be
reasonable for Plaintiffs to rely on oral representations when
involved in a transaction of this scale, but because the alleged
misrepresentations forming the bases for the causes of action
were written and not oral, the Court need not address this
argument.

alleged promise to remediate the Property to a Tier 1 standard pertains to future performance, not to a past or present fact, and in Maryland, "promises are not actionable under a theory of negligent misrepresentation."  Mot. at 22.

In support of this assertion of Maryland law, Defendant cites D&G Flooring, LLC v. Home Depot U.S.A., Inc., 346 F. Supp. 2d 818, 822 (D. Md. 2004), a case from the U.S. District Court of Maryland, which cites another case from the U.S. District Court of Maryland, Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc., 264 F. Supp. 2d 282, 291 (D. Md. 2003).  Heritage cites to a case from the Maryland Court of Special Appeals, which offers a more nuanced rule, that "predictive statements of future events" are generally not actionable as negligent misrepresentation.  Cooper v. Berkshire Life Ins. Co., 810 A.2d 1045, 1064 (Md. Ct. Spec. App. 2002).  A closer look at Maryland State court cases further refines this rule and distinguishes between statements that are "a prediction or an expression of expectation concerning external events" and those that are "relate[d] to matters within the speaker's control."  Gross v. Sussex, Inc., 630 A.2d 1156, 1169 (Md. 1993) (citing Weisman v. Conners, 540 A.2d 783, 796 (Md. 1988) and Fowler Vincent Harper et al., The Law of Torts § 7.10 at 442-51 (2nd ed. 1986)).  In Gross, the Court of Appeals held that statements of what a speaker will do in the future may support an action for

23

negligent misrepresentation if those statements represent the speaker's present intention regarding a matter within the speaker's control.  Id.  The alleged misrepresentations made in the Confirmation Letter relate to Sherwin-William's then-present intention to take future action related to the VCP and taking such action is within Sherwin-William's control.  Furthermore, the negligent misrepresentation claim as to the Tier 1 VCP Applications is not barred because the applications represent the then-present representation that Defendant is a Responsible Person intending to seek a Certificate of Completion for the Property based on a Tier 1A standard, again an action largely within Defendant's control.[11]

As Plaintiffs have pleaded facts upon which a cause of action for negligent misrepresentation can stand, the Court will deny the motion to dismiss Count V.

**D. Promissory Estoppel/Detrimental Reliance**

In Count VI, Plaintiffs allege that Defendant can be held liable under a theory of detrimental reliance.[12]  To succeed

---

[11] While completion of the VCP is not entirely within Defendant's control because MDE can terminate the VCP at any time, it is clear from the facts of the complaint that the failure to complete the VCP so far has been entirely due to factors within Defendant's control.

[12] The Maryland Court of Appeals noted its preference for using this term in lieu of the traditional nomenclature of "promissory estoppel."  See Pavel Enters. V. A.S. Johnson Co., 674 A.2d 523, 523 n1 (Md. 1996).  The theories are identical.

24

under this theory, Plaintiffs must meet the requirements of a

four-part test:

    1) a clear and definite promise;

    2) where the promisor has a reasonable expectation that the
    offer will induce action or forebearance on the part of the
    promise;

    3) which does induce actual and reasonable action or
    forebearance by the promise; and

    4) causes a detriment that can only be avoided by
    enforcement of the promise.

Pavel Enters., Inc. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md.

1996).  Defendant makes the same arguments for dismissal of this

claim as it made for dismissal of the misrepresentation claims,

namely that Plaintiffs have failed to allege a "clear and

definite promise" and that any reliance by Plaintiffs was not

reasonable.  Mot. at 23-24.  For the same reasons discussed

supra, the Court rejects these arguments and will deny the

motion to dismiss Count VI.

    **E. Declaratory Judgment**

    In Count VII, Plaintiffs ask the Court to exercise its

discretion pursuant to the Declaratory Judgment Act, 28 U.S.C. §

2201, to "declare that Defendant agreed to remediate the

Property to a Tier 1A standard" and award damages to Plaintiffs

for Defendant's failure to abide by this obligation.  Compl. at

21.  Plaintiffs further clarify that "[the Declaratory Judgment

prayer] is a straightforward request that the Court construe the

operative agreements as an integrated whole under the circumstances of the transaction, and resolve the parties' fundamental disagreement about their contractual rights." Opp. at 23 (emphasis added). As the Court has already determined supra that the agreements construed as an integrated whole do not create a contractual right to remediation, the Court will not be able to grant the relief requested. Therefore, the Court will grant the motion to dismiss Count VII.

### F. Attorneys' Fees

In the final count of the complaint, Plaintiffs assert their entitlement to recover attorneys' fees "by way of the contracts identified above," namely the indemnification provisions of the PSA and the SAA.[13] Compl. at 21; Opp. at 23. Defendant argues that this count must be dismissed because a claim for attorneys' fees is not a separate cause of action but rather is contingent on Plaintiffs first prevailing on their contractual claims. The Court agrees with Defendant. The Supreme Court has recognized that "the question of whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be

---

[13] While it is true that paragraph 6 of the SAA appears to provide for attorneys' fees as part of its indemnity provision, this provision has not been triggered because none of the wrongful acts alleged in the Complaint occurred in connection with Defendant's performance of "Activities" as defined in the SAA.

entitled to receive." Davis v. Passman, 442 U.S. 228, 238 (1979). Because an award of attorneys' fees is a form of relief, see Hess Constr. Co. v. Bd. of Educ., 669 A.2d 1352, 1354 (Md. 1996) (noting that attorneys' fees, when authorized, are generally either a statutory or contractual remedy), it is not a standalone cause of action. Plaintiffs have in fact prayed for such relief in all of the counts. For these reasons, the Court will grant Defendant's motion to dismiss Count VIII.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The motion to dismiss will be granted as to Counts I,II, VII and VIII, and be denied as to Counts III, IV, V and VI. A separate order consistent with this memorandum will be issued.


/s/
_____
William M. Nickerson
Senior United States District Judge


DATED: January 26, 2012