**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| CARROLL COMPANY, et al. | * | |
| | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No.: WMN-11-1700 |
| | * | |
| THE SHERWIN-WILLIAMS COMPANY, | * | |
| | * | |
| Defendant | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiffs Carroll Company and Ogden, LLC ("Plaintiffs") filed this lawsuit against Defendant Sherwin-Williams Company ("Sherwin-Williams"). The Complaint alleges that Sherwin-Williams fraudulently induced Plaintiffs to purchase a contaminated tract of land in Harve de Grace ("the Property") by misrepresenting to Plaintiffs that Sherwin-Williams would fully remediate the Property.[1] This Memorandum Opinion addresses Sherwin-Williams's Motion to Compel, [ECF No. 28], Plaintiffs' Motion to Compel, [ECF No. 32], and the oppositions and replies thereto. Sherwin-Williams, in its motion, seeks the production of documents withheld by Plaintiffs on the basis of privilege, and seeks continuing depositions of Kyle Ogden, Kenneth Niesman, Esq., and Fran Phillips, Esq. to inquire about items for which privilege was asserted. Plaintiffs, in their motion, pursue documents that have been created or considered by Sherwin-Williams's testifying expert and are being withheld as work product privileged. This case has been referred to me by Judge Nickerson to resolve discovery disputes

---

[1] Plaintiffs allege that Sherwin-Williams is liable on the basis of fraud, negligent misrepresentation, and promissory estoppel.

and related scheduling matters.  [ECF No. 29].    I find that a hearing is unnecessary in this case.

*See* Local Rule 105.6 (D. Md. 2011).   For the reasons stated herein, Sherwin-Williams's Motion

to Compel is GRANTED, and Plaintiffs' Motion to Compel is also GRANTED.

**I.      Sherwin-Williams's Motion to Compel.**

Plaintiffs have alleged that Sherwin-Williams made express and implied representations

that it would remediate the Property to the Tier1A standard after the transaction closed.  Tier 1A

property is approved for unrestricted residential use.  Plaintiffs allege that they explained to their

attorneys, who were negotiating with Sherwin-Williams, that the property must be a "clean piece

of property."   According to Plaintiffs, their attorneys conveyed that requirement to Sherwin-

Williams.   In its Motion, Sherwin-Williams seeks to compel conversations between Plaintiffs

and their attorneys to determine whether Plaintiffs did communicate this requirement to their

attorneys, and whether Sherwin-Williams made any representations to Plaintiffs' counsel about

this requirement.   Sherwin-Williams argues that it is entitled to these conversations and

documents for two reasons: (1) Plaintiffs did not intend that the communications with their

attorneys remain private, and (2) Plaintiffs are using these conversations with their attorneys to

prove that Sherwin-Williams made misrepresentations, and therefore cannot simultaneously

shield Sherwin-Williams from discovery regarding such conversations.

Sherwin-Williams's first argument fails, because Plaintiffs did intend that their

communications with their attorneys would be private.  When a client communicates with its

attorney "with the understanding that the information will be revealed to others," that

information is not protected by the attorney-client privilege.  *United States v. (Under Seal)*, 748

F.2d 871, 875 (4th Cir. 1984).  To determine if a client intends his communications to be

revealed or confidential, courts "look to the services which the attorney has been employed to

provide and determine if those services would reasonably be expected to entail the publication of the clients' communications." *Id.* For example, one court doubted that communications were confidential where clients "retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to include in their coal lease promotion brochures rather than for the purpose of obtaining legal advice for their own guidance as clients." *United States v. Jones*, 696 F.2d 1069, 1072-73 (4th Cir. 1982); *see also In re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1358 (4th Cir. 1984) (holding that client communications to a lawyer relating to the preparation of a prospectus to be used in the enlistment of investors were not confidential where the clients hired their attorney to convey information to third parties and not to provide legal advice for the clients' guidance).

Here, unlike *Jones* and *In re Grand Jury*, Plaintiffs retained counsel for the purpose of obtaining legal advice relating to the transaction between Plaintiffs and Sherwin-Williams. Decl. of Kyle Ogden ¶ 2-3. Plaintiffs' counsel provided legal advice in negotiations, in "closing of the transaction," and in subsequent related developments. *Id.* ¶ 3. It is certainly true that Plaintiffs' counsel "had authority to negotiate certain deal points in the transaction," *id.*, necessitating some form of "disclosure" of Plaintiffs' requirements. These "disclosures" during negotiations, however, were merely incidental to the main purpose of the attorneys' employment by Plaintiffs -- to obtain legal advice and assistance in its Purchase Agreement transaction with Sherwin-Williams. As such, Plaintiffs did not waive the attorney-client privilege on this ground.

Sherwin-Williams next argues that Plaintiffs are using conversations with their attorneys to prove their case, but are simultaneously asserting the attorney-client privilege to protect this same information from disclosure. The law prohibits a party from using information as a sword

to prove its case while shielding the information from disclosure by asserting the attorney-client privilege. *See, e.g.*, *Ehrlich v. Grove*, 914 A.2d 783, 798 n.14 (Md. 2007).

It is unclear, however, whether Plaintiffs are using their communications to their attorneys, however, to prove their remaining claims. As Sherwin-Williams states in its motion, "Plaintiffs remaining claims of intentional misrepresentation, fraud in the inducement, negligent misrepresentation, and promissory estoppel all rely on the existence of a false representation *by* Sherwin-Williams *to* the Plaintiffs intended to induce [] the Plaintiffs to enter into the transaction to their detriment." Def.'s Mot. at 5-6 (emphasis added). As such, Sherwin-Williams's argument that it is entitled to all communications between Plaintiffs and their attorneys relating to this transaction is overbroad. Even if Plaintiffs did tell their attorneys that they required "a clean piece of property," that representation would not prove that Sherwin-Williams misrepresented anything to Plaintiffs relating to this requirement. An equally likely inference could be a failure of Plaintiffs' counsel to convey the requirement to Sherwin-Williams.

If, however, Plaintiffs do intend to argue that their communications to their attorneys somehow implies a misrepresentation by Sherwin-Williams, Plaintiffs must produce evidence relating to those communications. In other words, Sherwin-Williams is entitled to receive documents relating to what Plaintiffs communicated to their lawyers regarding Plaintiffs' *own* remediation requirements *only* if Plaintiffs intend to use this information to prove their case.[2]

Because this case is premised on misrepresentations allegedly made by Sherwin-Williams, information about Sherwin-Williams's statements to Plaintiffs' counsel is more

---

[2] Although the deposition testimony alludes to this theory, it is certainly possible that Plaintiffs will not attempt to prove Sherwin-Williams's misrepresentations by arguing that Plaintiffs communicated certain requirements to their attorneys. If Plaintiffs forego this theory, this Court will not require Plaintiffs to produce related documents because the inequity of allowing Plaintiffs to use privileged information as a sword and shield would no longer be present.

relevant.  Plaintiffs may attempt to establish Sherwin-Williams's misrepresentations by arguing that Sherwin-Williams made statements regarding remediation to Plaintiffs' attorneys, and that these statements were relayed to Plaintiffs, in turn inducing Plaintiffs to mistakenly agree to purchase the Property.  If Plaintiffs possess documents or communications between Plaintiffs and their attorneys discussing Sherwin-Williams's representations relating to Sherwin-Williams's remediation responsibilities, or the lack thereof, Plaintiffs must produce that evidence.  Plaintiffs cannot argue that Sherwin-Williams made statements regarding remediation to Plaintiffs' counsel and simultaneously argue that the privilege protects such statements from production.  *See Ehrlich*, 914 A.2d at 798 n.14.

As for Sherwin-Williams's request for continuing depositions of the witnesses to address issues over which privilege was asserted, the parties should determine if such continued depositions are both necessary and consistent with this Memorandum.  The parties will be ordered to submit a status report, on or before October 31, 2012, to advise this Court whether Sherwin-Williams still seeks continued depositions of the witnesses.  If the parties continue to dispute the necessity and scope of continued depositions, the parties' positions should be summarized in the status report.

## II.    Plaintiffs' Motion to Compel.

From May, 2006, to December, 2008, Environmental Resource Management ("ERM") and Leonard Rafalko ("Rafalko") served as Sherwin-Williams's environmental consultants with respect to the Property.  Sherwin-Williams avers that it became aware in or about December, 2008 that litigation over the Property was reasonably anticipated.  In Sherwin-Williams's view, between December 10, 2008 and June 23, 2009, ERM and Rafalko served as litigation

consultants.  Def.'s Opp'n at 4. On May 8, 2012, Sherwin-Williams retained Rafalko to be its testifying expert in this case.

Plaintiffs seek to compel the production of documents identified in Sherwin-Williams's privilege log relating to Rafalko and ERM.  Sherwin-Williams argues that the Rafalko-related documents dated between December 10, 2008 and June 23, 2009 are work product privileged because they were prepared in anticipation of litigation.  Plaintiffs argue that Rule 26 allows them to compel production of these documents because Sherwin-Williams's testifying expert, Rafalko, either prepared or considered such documents in formulating his expert opinions. Plaintiffs are correct.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii), when a party designates an individual as an expert witness, it must produce a report containing the "facts and data considered by the witness" in forming the witness's opinion.  As Sherwin-Williams correctly notes, Rule 26 was amended in 2010.  These amendments were meant to, in part, clarify the scope of required disclosures relating to expert witnesses.  The 2010 advisory committee notes make clear that Rule 26 does not require parties to disclose either "theories or mental impressions of counsel" or expert draft reports.  *See* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendments.  Aside from expert draft reports and impressions of counsel, however, parties must disclose "any material considered by the expert, from whatever source, that contains factual ingredients."  *Id.*  The words "considered by" in Rule 26 require parties to produce more than the information that its experts "relied on" in forming their opinions.  *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005).  Rather, parties must produce "any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected."

*Id.*; *see Turnpike Ford, Inc. v. Ford Motor Co.*, 244 F.R.D. 332, 334 (S.D. W.Va. 2007); Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendments.

Critically, the required disclosure of information "considered by" a testifying expert "trumps the [work product] protection provided by Rule 26(b)(4)([D])." *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 1578937, at *4 (N.D. Okla. June 2, 2009); *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633, 639 (N.D. Ind. 1996).   Therefore, when an individual serves as a litigation consultant and an expert witness, the party asserting the work product protection must demonstrate a "clear distinction" between the individual's roles and information considered in those roles.  *Tyson Foods*, 2009 WL 1578937, at *5; *B.H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 660 (N.D. Okla. 2005); *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 61 (S.D.N.Y. 1997).   To shield information where the same individual is retained as an expert and a litigation consultant, the individual must be "retained to testify and in addition to advise counsel *outside of the subject of his testimony*."[3]  *Beverage Mktg. Corp. v. Ogilvy & Mather*, 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983) (emphasis added).  Sherwin-Williams has not met this burden.

Sherwin-Williams argues that Rafalko's opinions are "based upon" previously produced communications from 2006 until 2009, and upon Rafalko's training and experience.   Def's Opp'n at 5.  This argument misinterprets the proper standard, as Sherwin-Williams must show

---

[3] As noted above, the 2010 Amendments to Rule 26 make clear that parties are not required to produce draft expert reports and attorney mental process or impressions.   Prior to these Amendments, an "overwhelming majority" of courts, including the court in *Synthes*, held that all attorney work product and attorney-client privileged information was discoverable under Rule 26.  *See Synthes*, 232 F.R.D. at 463.  As noted, Rule 26 has been amended specifically to "alter the outcome in cases that have . . . require[d] disclosure of all attorney-expert communications and draft reports."  Indeed, no such disclosures are required here.  However, these amendments do not alter the requirement that all facts or data considered by the expert witness in formulating his or her opinions, except for draft reports and mental impressions or theories of counsel, must be produced.

that Rafalko did not "consider" other documents and communications, even if those items did not constitute the basis of his eventual opinions. *See Synthes*, 232 F.R.D. at 463. To this end, Sherwin-Williams generally asserts that, "Plaintiffs made no effort to demonstrate how the documents identified on Defendant's privilege log were 'considered' by Rafalko in rendering his opinions." Def's Opp'n at 5. Requiring Plaintiffs to demonstrate which documents were considered by Sherwin-Williams's own expert, however, would be nonsensical, as only Sherwin-Williams has access to the unproduced documents and the knowledge necessary to determine whether such documents were considered by Rafalko. *See Tyson Foods*, 2009 WL 1578937, at *4 n.1. Rather, Sherwin-Williams must illustrate the distinction between the information considered by Rafalko as an expert and as a litigation consultant. *See id.* Even if the distinction between Rafalko's roles is ambiguous, the ambiguity "should be resolved in favor of the party seeking discovery." *B.C.F. Oil Refining Inc.*, 171 F.R.D. at 62.

Sherwin-Williams has failed to show that any distinction exists. Sherwin-Williams generally asserts that, "Rafalko's opinions deal with a variety of topics that simply do not relate to the documents contained on Defendants' privilege log." Def's Opp'n at 5. Other than this one general statement, Sherwin-Williams has not provided this Court any indication that Rafalko's role as a litigation consultant involved information outside the scope of his role as an expert witness. In fact, a review of Sherwin-Williams's privilege log and Rafalko's expert report yields the opposite conclusion: there is no "clear distinction" between the matters that Rafalko considered and authored as an expert and as a litigation consultant.

As an expert witness, Rafalko will testify that, among other things, Tier 1 remediation was not feasible for the Property; Tier 3 remediation was the only "technically practical and reasonable way" to obtain approval; and "Sherwin-Williams went to great lengths to pursue the

VCP[4] for the Property." *See* Pls.' Mot., Exh. J.  In Sherwin-Williams's privilege log, several communications seen or authored by Rafalko seemingly involve cost estimates, which are highly germane to Rafalko's testimony that Tier 1 remediation was not feasible in part because of the cost.  *See id.*, Exh. H.  Such entries authored by Rafalko include, "Communication between counsel and consultant in anticipation of litigation re: Remedial cost estimates" and "Memorandum by consultant in anticipation of litigation regarding estimated costs for scenarios related to Harve de Grace site."  *Id.*  Many entries also seemingly involve Sherwin-Williams's efforts to pursue the VCP for the Property, including entries authored by Rafalko labeled as "Memorandum prepared by consultant in anticipation of litigation re: VCP chronology" and "Memorandum from consultant in anticipation of litigation re: Phase II assessment."[5]  *Id.*  There is no "clear distinction" between information relevant to Rafalko's role as a litigation consultant and as an expert witness.  As such, Sherwin-Williams cannot withhold documents considered by Rafalko as work product privileged, and Plaintiffs' Motion to Compel is granted.

Plaintiffs are not entitled to the production of documents on Sherwin-Williams's privilege log that include draft expert reports or theories or mental impressions of counsel.  However, to the extent that Sherwin-Williams has withheld information outside of these narrow categories, this information must be produced.  This includes documents created by Rafalko

---

[4] "VCP" stands for Maryland's Voluntary Cleanup Program.  The Property here was contaminated, and, under the VCP, Sherwin-Williams would be responsible for addressing the environmental concerns as part of the sale of the Property to Plaintiffs.  Sherwin-Williams agreed to pursue the VCP as part of the transaction, hiring ERM and Rafalko to, among other things, complete a VCP application.  *See* Pl's Mot., Exh. J at 1.  Plaintiffs viewed this commitment as critical to its eventual purchase of the Property, as Plaintiffs wanted to ensure that they were not responsible for pre-existing environmental contamination.  Compl. ¶ 23.

[5] Part of the VCP application requires submission of a Phase I and II Environmental Site Assessment.  Pls.' Mot., Exh. J at 3.

other than draft expert reports, and documents, communications, and information seen or considered by Rafalko at any time that could have been the basis for his expert opinions, whether or not Rafalko ultimately used or rejected such information.  If, after applying these explicit guidelines, Sherwin-Williams continues to assert that some of the documents it has identified are privileged, and if Plaintiffs wish to challenge this privileged status, this Court will review such documents *in camera*.   The parties will be ordered to provide a status report to the Court on ore before October 31, 2012, to inform the Court whether any *in camera* review will be necessary.

A separate order follows.


Dated: October 10, 2012                                   _____/s/_____
                                                          Stephanie A. Gallagher
                                                          United States Magistrate Judge